```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON

RONALD C. TRITSCHLER, et al.,   )
                                )
     Plaintiffs,                )   Civil Action No. 5:07-437-JMH
                                )
v.                              )
                                )
                                )
SCOTT HAIRE, et al.             )   MEMORANDUM OPINION AND ORDER
                                )
                                )
     Defendants.                )
```

      \*\*  \*\*  \*\*  \*\*  \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment [Record No. 38 and 46]. Each party has responded [Record No. 47 and 49] and, in turn, filed a Reply [Record No. 48 and, as tendered, 51].[1] These motions are now ripe for a decision.

**I. Background**

The material facts in this case are undisputed and straightforward. On June 6, 1997, Plaintiffs bought 500,000 shares of stock in a corporation which is now know as Wound Management Technologies, Inc. (hereinafter, "WMT"). Later that year, WMT's CEO and president, Defendant Haire, asked Plaintiffs to return the shares of stock for a reason which has not been provided to the

---

[1] Defendants have also filed a Motion for Leave to File Excess Pages [Record No. 52] and have, thus, tendered their Reply. That Motion shall be granted.

Court and which is ultimately immaterial to the Court's decision today.  Following that request, Plaintiffs entered into an oral agreement with Haire whereby Plaintiffs would return the stock certificates, as well as provide irrevocable stock powers, to Haire so that he could temporarily transfer the shares out of their names in exchange for a promise that those shares would be transferred back to Plaintiffs at some undetermined point in time.  On November 25, 1997, Plaintiffs performed their obligations under the parties' agreement when they signed and returned irrevocable stock powers for the stock certificates.  It is undisputed that the shares were transmitted and transferred as agreed and anticipated.

Plaintiffs first demanded the return of the shares in a February 17, 1998, memorandum in which Ronald Tritschler asked Defendants to "please issue the certificates" to Plaintiffs.  The shares were not returned at that time.  Plaintiffs repeatedly demanded the return of their shares in a series of writings, dated September 8, 1998, May 28, 1999, June 12, 1999, October 10, 2000, April 30, 2001, and September 25, 2001.

Finally, on October 1, 2001, Haire wrote to Ronald Tritschler outlining several business plans that, if accomplished, would result in the return of either the shares of stock or compensation for those shares to Plaintiffs.  That memo reads, in its entirety, as follows:

> Basically where I am at is that [Wound Management] is in the process of finishing up

>       selling the clinics to Stone Capital.  The
>       transaction is due to close on or before the
>       22th [*sic*] of October.  Therefore that
>       triggers one or another event where [Wound
>       Management] is going to merge with another
>       company for stock and some cash or will now be
>       able to get the necessary cash to make its
>       business plan work and the stock will be
>       immediately transferred to your name at that
>       time.  If the merger does not happen then I
>       will make the necessary arrangements to get
>       the stock transferred when I get the preferred
>       stock transferred from Stone in that
>       transaction.  All of this is going to come
>       down one way or another this month, so I will
>       keep you posted as to where we are in all the
>       transactions.  Also this will trigger enough
>       money for me to make sure that Frank [Barker]
>       gets his obligations satisfied to you as well.
>       Give me a call on the 15 [*sic*] to see where we
>       are in at in [*sic*] everything.

Notwithstanding the memo, Plaintiffs' shares were not returned, and Plaintiffs again demanded the return of the shares on August 30 and 31, 2006,[2] and January 19 and 30, 2007.  Finally, on February 13, 2007, attorney Henry W. Simon, counsel for Haire, wrote to Ronald Tritschler confirming that the 500,000 shares would not be returned and stating his belief that any claim for damages was now barred by the applicable statutes of limitations.

In December of 2007, Plaintiffs filed a Complaint, averring breach of contract, fraudulent misrepresentation, conversion, and

---

[2] An email dated August 30, 2006, from Haire to Tritschler offers to settle all disputes between the parties, including the one at bar the Court presumes, by providing 100,000 shares of "MB software."  In response, Tritschler declined the offer and stated his preference to receive $107,500 from Haire, the price paid for the stock shares at bar here.  There is no record of any reply from Haire.

unjust enrichment and seeking damages based on the stock's value in March 1998. In 2008, Plaintiffs amended their Complaint to assert the same claims against Wound Management.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

### A. Breach of Contract

In Counts I and II of the Complaint, Plaintiffs aver that Defendants entered into a contract with Plaintiffs under which Plaintiffs agreed to transfer their stock to Defendants in exchange for a promise that the shares of stock would be returned to

Plaintiffs after a short time.  In Count I, Plaintiffs aver that Defendants "entered into a written contract, consisting of several letters, memos and emails regarding the stock transfer and agreed upon return."  In Count II, Plaintiffs aver that Defendants "entered into an oral contract regarding the stock transfer and agreed upon return."   In both Counts I and II, Plaintiffs aver that Defendants breached the contract with Plaintiffs by failing or refusing to return the stock shares as promised.  In their Motion, Defendants argue and the Court agrees that there is no evidence of a written contract upon which Plaintiffs may recover and that Plaintiffs' claim for breach of an oral contract is barred by application of the statute of limitations.[3]

First, the agreement which Plaintiffs now seek to enforce was plainly made prior to November 25, 1997, when the certificates and irrevocable stock powers were sent to Defendant.  Neither party has produced a contemporaneous writing or otherwise suggested that the

---

[3] Defendants incorrectly argue that there was never a contract to begin with.  Every first-year law student knows that, to form a contract, one must have (1) an offer, (2) an acceptance, and (3) consideration. *See Cantrell Supply, Inc. v. Liberty Mut. Ins Co.*, 94 S.W.3d 381 (Ky. App. 2002).  In this instance, Defendants offered and Plaintiffs agreed that Defendants would take possession of their shares in exchange for Defendants' promise to return the shares to Plaintiffs after a time, which promise served as consideration. Plaintiffs performed their obligations under the agreement, sending their shares to Defendants in exchange for the promise of their return, not as a gift or a gratuitous undertaking. Plaintiffs' received consideration – the promise of the return of their shares, which they fully anticipated would culminate in the return of those shares, Defendants' obligation under the agreement, – for their performance of their portion of the bargain.

agreement was memorialized in writing at that time.[4]  Rather, Plaintiffs argue that the numerous written demands for performance of the agreement by Haire made by the Plaintiffs from 1998 through 2006, coupled with two written responses to those demands made by Defendant Haire or his counsel, constitute a written contract which memorialized the earlier oral contract.  The Court is not persuaded.  While those writings reference the oral agreement of the parties made in 1997 and may demonstrate the veracity of Plaintiffs' account of the oral agreement made in 1997, those writings do not, themselves, constitute a written agreement between the parties.

Accordingly, the Court is left to consider the parties' unwritten or oral agreement.  At the latest, Plaintiffs' cause of action for breach of the parties' agreement accrued was upon their acceptance of the proposed agreement by fulfilling their obligation to provide the shares in November 1997.[5]  Applying KRS 413.120,

---

[4] In fact, Plaintiff Ronald Tritschler has testified that, at some point prior to the preparation of his September 7, 1998, demand letter, he attempted to create a writing that would satisfy the requirements of the law and to have Defendant Haire execute it. Tritschler has testified that this writing was never agreed to nor executed by the parties.

[5] Ordinarily, limitations do not start to run from the formation of an agreement, but from the date of its promised performance, i.e., the first date upon when a breach can occur. *Finley v. Thomas*, 107 S.W.2d 287, 288 (Ky. 1937); *see Gould v. Bank of Independence*, 94 S.W.2d 991, 992-93 (Ky. App. 1936) (certificate of deposit payable and cause of action accrues upon maturity of certificate whether or not demand is made).  In this instance, however, there is no such date provided.  Rather, Plaintiffs have

which provides a five year statute of limitations for breach of oral contract, the Court finds that the statute of limitations would have run no later than November 2002.[6]

However, in Kentucky, an acknowledgment of a debt may revive or start anew the limitations period so long as the acknowledgment

---

treated the agreement as one "payable on demand," in which case the statute of limitations began to run from the date of the agreement. *Hodges' Adm'r v. Asher*, 6 S.W.2d 451, 451 (Ky. App. 1928) (statute of limitations begins to run on date of note for note payable on demand). *But see Corbin Banking Co. v. Bryant*, 151 S.W. 393, 394 (Ky. App. 1912) (statute of limitation does not begin to run against depositor in favor of bank until depositor makes demand for money and payment is refused). The Court notes, however, that even if it were to determine that the statute of limitations began to run on the date that Defendants' performance was first demanded by Plaintiffs, February 17, 1998, it would make no difference to the Court's analysis, considering the renewal of the obligation, as set forth above.

[6] Federal courts sitting in diversity jurisdiction cases apply the limitations law of the state in which they sit, *Combs v. Int'l Ins. Co.*, 163 F. Supp. 2d 686, 690 (E.D.Ky. 2001), which is, in this case, Kentucky. Defendants advocate for the application of Kentucky's "borrowing statute" and the statutes of limitations provided for by Texas law in this instance, arguing that the causes of action averred by Plaintiffs accrued, if anywhere, in Texas. Kentucky's borrowing statute, KRS 413.320, requires courts to apply another state's statute of limitations if a cause of action accrued in that state and said state provides a shorter statute of limitations. *Id.; see Atkins v. Schmutz Mfg. Co.*, 372 F.2d 762, 764 (6th Cir. 1967); *Combs*, 163 F. Supp. 2d at 691. Having considered the matter, the Court has determined that Plaintiffs' claims are barred by application of either the statutes of limitations under Kentucky or Texas law. For example, claims arising out of oral contracts are subject to a five year statute of limitations in the Commonwealth under KRS 413.120, and an even shorter, four year statute of limitations in Texas under V.T.C.A. 16.051. Since this and Plaintiffs' other claims are barred upon application of either statute of limitations, the Court need not determine whether the claims accrued in Kentucky or Texas nor the propriety of applying the borrowing statute.

includes an express or implied promise to pay the debt and is made within the original period of limitations.[7] *Davis v. Strange*, 161 S.W. 217, 219 (Ky. 1913) *Marcum's Adm'x v. Terry*, 142 S.W. 209, 209-10 (Ky. 1912); *Head's Ex'rs v. Manner's Admin'rs*, 28 Ky. 255, 1831 WL 2136, *5 (Ky. 1831).  In his October 21, 2001, correspondence, Defendant Haire wrote to Ronald Tritschler that, within a month, either "stock [would] be immediately transferred to [Tritschler's] name" upon a particular merger or Haire would "make necessary arrangements to get the stock transferred," apparently from another transaction.  This communication can be understood as a promise to fulfill Defendants' obligations under the 1997 agreement which would revive or start anew the limitations period.

Thus, the statute of limitations began to run again after Haire's October 21, 2001, acknowledgment of his obligation under the 1997 oral contract or, at the very latest, after his subsequent failure to comply with his obligations in the one month time frame set forth in the writing, i.e., on November 21, 2001.  The renewed five year period of limitations on the parties' oral agreement expired at the earliest in October 2006 or, at the latest, in November 2006, without any further correspondence from Defendants

---

[7] Such an acknowledgment would serve to revive or renew limitations periods only for Plaintiffs' contract claim, not their tort or equitable claims.  *See City of Louisa v. Horton*, 93 S.W.2d 620, 623 (Ky. 1935).

or their agents that could revive the limitations period.[8] Plaintiffs did not file suit for over a year after the statute of limitations expired, and their claim for breach of the oral contract was, by that time, barred. Plaintiffs' claims for breach of contract shall be dismissed.

**B.    Fraudulent Misrepresentation**

Plaintiffs aver in Count III that Defendants fraudulently misrepresented to Plaintiffs that the certificates would be returned within a short period of time if returned to Defendants by Plaintiffs. To state a claim of fraud in the Commonwealth, one must allege with particularity (I) a material misrepresentation (ii) that is false, (iii) known to be false or made recklessly, (iv) with inducement to be acted upon, (v) action in reliance upon the representation, and (vi) an injury. *United Parcel Service Co.*

---

[8] Plaintiffs argue that the February 2007 letter from Haire's counsel to Tritschler again revived the obligation imposed by the 1997 oral promise. That letter does not, however, contain any promise to pay, was not made within the renewed period of limitations, and, in fact, expresses the belief that any claim Plaintiffs might have had was, by then, barred by the statute of limitations. Accordingly, that letter does not renew the limitations period for the oral contract at bar. *Head's Ex'rs v. Manner's Adm'rs*, 28 Ky. 255, 1831 WL 2136, *5 (without promise to pay, there is no revival or new limitations period; where intimation is made that statute of limitations will be pleaded, "the law will not imply a promise to pay.").

Plaintiffs have not suggested that Haire's August 30, 2006, email would have renewed the period of limitations and for good reason. That email, in which Haire offered to settle the disputes between the parties in exchange for 100,000 shares of stock, does not include any promise to fulfill the terms of the original agreement for the reissue of the shares.

*v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999); *Anderson v. Pine S. Capital*, 177 F. Supp. 2d 591, 596-97 (W.D. Ky. 2001). In this instance, assuming that Defendants misrepresented their intent to return Plaintiffs' shares, knowing that statement to be false, Plaintiffs' claims would have accrued by November 27, 1997, when they relinquished the shares in reliance upon the representation and lost the benefit of having those shares in their possession. Applying either Kentucky's five year statute of limitations (or Texas' four year statute of limitations) for fraud, the statute of limitations for the claim ran in 2002 (or 2001), well before this suit was filed in 2007. *See* KRS 413.120; V.T.C.A. § 16.004. Plaintiffs' claim for fraudulent misrepresentation is, thus, barred and shall be dismissed.

    **C.    Conversion**

Count IV avers conversion of Plaintiffs' stock certificates by Defendants. Conversion requires proof that:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky. 2005), quoting 90 C.J.S. *Trover and Conversion* § 4 (2004). Assuming that all other elements of this claim were met, Plaintiffs' claim for conversion accrued when they first made a demand for the return of the shares which the defendant refused, on or about February 17, 1998. Applying Kentucky's two year statute of limitations for claims arising out of the taking, detention, or injury of personal property, the statute of limitations for this claim expired in early 2000. KRS 413.125; *see also* V.T.C.A. § 16.003 (same). The claim is now barred and shall be dismissed.

D.  **Unjust Enrichment**

With regard to Plaintiffs' final claim in Count V, "unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth,* 566 S.W.2d 161, 165 (Ky. App. 1977). "[T]here can be no implied contract or presumed agreement where there is an express one between the parties in reference to the same subject matter." *Fruit Growers Exp. Co. v. Citizens Ice & Fuel Co.,* 112 S.W.2d 54, 56 (Ky. 1937). As the parties to this matter had an express oral contract concerning the shares, no claim will be implied by this Court, and this claim shall be dismissed.[9]

---

[9] Even if a claim of unjust enrichment could lie against Defendants, it would be barred by the applicable statute of limitations. Any claim for unjust enrichment would have accrued

**III. CONCLUSION**

Having carefully considered the parties' pleadings and the undisputed evidence presented, the Court concludes that Plaintiffs have not identified a written contract upon which their claim for breach of contract may be premised and that Plaintiffs' claims for breach of oral contract, fraudulent misrepresentation, and conversion are barred by the applicable statutes of limitations. Finally, as there existed an oral contract in this matter, no claim for unjust enrichment is cognizable. On each of these claims, Defendants are due judgment as a matter of law, and Plaintiffs' claims shall be dismissed.

Accordingly, **IT IS ORDERED:**

(1) that Defendants' Motion for Leave to File Excess Pages [Record No. 52] shall be, and the same hereby is, **GRANTED;**

(2) that Defendants' Motion for Summary Judgment [Record No. 46] shall be, and the same hereby is, **GRANTED;**

(3) that Plaintiffs' Motion for Summary Judgment [Record No. 38] shall be, and the same hereby is **DENIED.**

---

upon Plaintiffs' initial demand for the return of the shares in February 1998, and the claim would have expired, at the latest, in 2003, four years before Plaintiffs brought suit. *See* KRS 413.120 (five year statute of limitations for claims of unjust enrichment). *See also Elledge v. Fribert-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007); V.T.C.A. § 16.003 (two year statute of limitations applies to claims of unjust enrichment predicated on a conversion or taking or detention of another's property).

This the 1st day of June, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge